UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| UNITED STATES | |
|---|---|
| v. | M.J. No. 22-8040-PGL |
| MELVIN ANTONIO PEREZ MEDINA, | |
| Defendant. | |

**AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR A CRIMINAL COMPLAINT**

I, Joseph P. Flynn, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I am a Trooper with the Massachusetts State Police ("MSP") and currently assigned to the Federal Bureau of Investigation ("FBI") and the New England Organized Crime Drug Enforcement Task Force ("OCDETF").

2.      I am currently a Massachusetts State Trooper and have been employed by the Massachusetts State Police since August of 2017. Upon completion of the Massachusetts State Police Academy in January of 2018, I was assigned to the Division of Field Services conducting uniformed patrol duties until October of 2020. In October of 2020, I was assigned to the Division of Homeland Security and Preparedness in the Narcotics Section as a Task Force Officer (TFO) for the United States Postal Inspection Service on the Contraband Interdiction and Investigations (CI2) Team. I served in this capacity until June of 2022, when I was reassigned as a TFO, defined as a sworn Special Federal Officer, with the FBI. I am an investigative or law enforcement officer of the United States and authorized to exercise the powers of enforcement personnel set forth in 21 U.S.C § 878. I am deputized pursuant to Title 28, Federal Code of Regulations, sections 0.112 and 0.19A, and I am charged with the duty of investigating violations of the laws of the United

States as stated in Title 28, Federal Code of Regulations by order of the Attorney General of the United States.

3. I have received training from the New England State Police Information Network ("NESPIN"), the MA State Police, the United States Postal Inspection Service, and the Massachusetts National Guard Counter Drug Program in (among other things) basic narcotic investigations, drug identification, drug detection, interdiction, familiarization with narcotic laws, identification and seizure of drug related assets, organized crime investigations, and physical and electronic surveillance techniques.

4. My primary duties as an FBI TFO include the investigation of organized narcotic traffickers, narcotic distribution and money laundering offenses, and other federal and state crimes. I have participated in numerous arrests for both state and federal law violations, seizures of large quantities of controlled substances, physical and electronic surveillance, the execution of search warrants, and debriefing of informants. In conjunction with other federal law-enforcement agencies I have participated in investigations of large scale national and international drug trafficking organizations. Based on my training and experience, I am familiar with narcotics traffickers' methods of operation, including methods used by them to distribute, store, and transport narcotics and to collect, expend, account for, transport, and launder drug proceeds. Based on my training and experience, I am familiar with the vernacular used by consumers and distributors of illegal narcotics. I have observed numerous types of controlled substances and I am familiar with the packaging, pricing structure, distribution methods, and street jargon associated with their sale and use.

5. Based on my training and experience, I am familiar with the methods of operation employed by drug traffickers and money launderers operating at the local, state, and interstate

levels, including those involving the distribution, storage, and transportation of controlled substances and the collection of money that constitutes the proceeds of drug-trafficking activities. Specifically, I am familiar with the manner in which drug traffickers and money launderers use vehicles, common carriers, mail and private delivery services, and a variety of other means to transport and distribute drugs and the proceeds of drug trafficking. I am familiar with the manner in which drug traffickers and money launderers often store drugs and drug proceeds in storage sites commonly referred to as "stash houses."

## PURPOSE OF AFFIDAVIT

6.   I make this affidavit in support of an application for a criminal complaint charging Melvin Antonio PEREZ MEDINA (hereinafter, "PEREZ MEDINA") with possession with intent to distribute controlled substances, in violation of Title 21, United States Code, Sections 841(a)(1) (hereinafter, the "Charged Offense"). Based on the facts set forth in this affidavit, there is probable cause to believe that PEREZ MEDINA committed the Charged Offense.

7.   The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses, among other things. This affidavit is intended to show that there is probable cause to believe that PEREZ MEDINA committed the Charged Offense and does not set forth all of my knowledge about this matter.

## BACKGROUND OF THE INVESTIGATION

8.   In or about March 2022, a cooperating witness (hereinafter, the "CW") provided information to law enforcement regarding drug traffickers in Lawrence, Massachusetts. The CW was previously the target of a drug trafficking investigation and was detained by the FBI while in possession of a significant quantity of narcotics. The CW agreed to cooperate with law enforcement in hopes of receiving consideration on potential federal drug distribution charges. In

addition, the CW has received monetary and immigration benefits in exchange for the CW's cooperation. Since the CW began cooperating, agents have corroborated information provided by the CW, which has led to seven arrests, as well as the seizure of approximately 48 kilograms of cocaine, over 6 kilograms of fentanyl, and approximately $300,000 in U.S. currency. Accordingly, I believe the information provided by the CW to be reliable.

9. In the spring of 2022, the CW advised agents of an individual, known to the CW as "La Grasa" or "Romeo," who was looking for customers in the greater Boston and Lawrence Massachusetts area to whom he could distribute kilogram quantities of fentanyl and cocaine. In the summer of 2022, during an attempted undercover meeting with PEREZ MEDINA, Special Agents from the Drug Enforcement Administration ("DEA") positively identified "La Grasa/Romeo" as Melvin Antonio PEREZ MEDINA based on their familiarity with PEREZ MEDINA from a previous investigation.

10. On August 10, 2022, at the direction of investigators, an undercover officer (hereinafter, the "UC") called a phone number provided by the CW as the number for PEREZ MEDINA. During that call, the UC told PEREZ MEDINA that the UC wanted "lo de abajo." Based on my training and experience, and discussions with the UC, I know that "lo de abajo" is a Spanish phrase that is commonly used by drug traffickers to refer to fentanyl. All communications between the UC and PEREZ MEDINA were in Spanish. The UC and PEREZ MEDINA exchanged a series of phone calls over the course of August 10, 2022. None of the calls from August 10, 2022 were recorded, however, all subsequent calls, voice notes, and text messages were recorded and preserved as evidence. During one of the calls, PEREZ MEDINA informed the UC that he only had "one in hand" and was getting a shipment in two days. The UC interpreted this to mean that PEREZ MEDINA had one kilogram of fentanyl ready to sell ("one in hand") and

4

would be obtaining additional kilograms of fentanyl (a "shipment") in two days. During another call, PEREZ MEDINA told the UC that he was getting "7 to 15" in two days, which the UC interpreted to mean 7 to 15 kilograms of fentanyl. PEREZ MEDINA discussed selling the UC the one kilogram of fentanyl on credit. PEREZ MEDINA asked the UC to provide $1,000 for PEREZ MEDINA's driver, and said that the UC could pay for the kilogram on a later date.

11. On August 11, 2022, PEREZ MEDINA sent the UC a text message, which read, *"mande a buscar los 2 sapato quw esta aqui,"* which roughly translates to "Come get these two sneakers that are here." The UC reported that the UC understood the word "sapato," or sneakers, to be a reference to kilograms of fentanyl. Approximately thirty minutes after receiving that text message, PEREZ MEDINA sent the UC a voice memo, which was in Spanish. The following is a rough summary translation of that message: *"come get these because I have two little kids that get into everything and I can't have them here and the other shipment is taking a little longer but I will have it."* PEREZ MEDINA then asked the UC to pick up the "two" because he did not have a place to keep "it" (the fentanyl) in his house.

12. On August 12, 2022, PEREZ MEDINA sent the UC a text message stating that PEREZ MEDINA was ready with "the sneakers," which based on my training and experience and the background of the investigation, I believe to be a reference to kilograms of fentanyl.

13. On August 13, 2022, at the direction of investigators, the UC sent PEREZ MEDINA a voice memo that stating that the UC did not want "2," and that the UC was waiting for "the size 7s." The UC reported that when the UC said, "the size 7s" the UC was referring to 7 kilograms of fentanyl. Approximately two minutes after the UC sent the voice memo about "the size 7s," the UC received a text message from PEREZ MEDINA that stated, *"toy completo."* The UC reported that the UC believed that PEREZ MEDINA meant to type the word "soy," which

5

translates to "I am," instead of "toy." The UC understood PEREZ MEDINA's message to mean that he had the fentanyl. PEREZ MEDINA then sent the UC another text message that read, "*Yo tengo lo 7 muneco*," which roughly translates to, "I have 7 dolls." The UC reported that the Spanish word, "muneco" means doll in Spanish, and that the UC understood this message to mean that PEREZ MEDINA had 7 kilograms of fentanyl available for sale.

14. On August 14, 2022, PEREZ MEDINA sent the UC a voice memo asking if they were going to meet to complete the deal that day. The UC sent PEREZ MEDINA a voice memo stating that the UC would try to find an associate who could meet to receive the kilograms. PEREZ MEDINA sent the UC a voice memo stating that he needed to get rid of the kilograms to pay off a debt because the product was supplied to him on credit.

15. Also on August 14, 2022, the UC placed a recorded call to PEREZ MEDINA. During the call, the UC told PEREZ MEDINA that the UC was going to get money together and asked PEREZ MEDINA if he still had "the 7 dolls," meaning 7 kilograms of fentanyl. At the direction of investigators, the UC requested PEREZ MEDINA to purchase a toolbox from Home Depot that would fit 7 kilograms of fentanyl, and they agreed to meet the following day. PEREZ MEDINA agreed to meet the following day, and the UC told PEREZ MEDINA that the UC would provide further instructions about where to meet in the morning.

16. On August 15, 2022, the UC sent PEREZ MEDINA a voice memo saying that the UC was running errands and would call later to provide a place and time to meet. Later that day, the UC called PEREZ MEDINA and said that the UC was a half hour away. The UC then sent PEREZ MEDINA a text message with the address of the Home Depot in Reading, Massachusetts. PEREZ MEDINA responded via text message stating that he would get there in an hour.

17. Based on court authorized location information for a telephone used by PEREZ

MEDINA,[1] investigators believed that PEREZ MEDINA was in the area of 376 Essex Street, Lawrence, Massachusetts, and so they established surveillance in that area.

18. At approximately 1:24 p.m., investigators observed PEREZ MEDINA exit the residence at 376 Essex Street in Lawrence and walk to another residence at 125 Lowell Street in Lawrence. Investigators briefly lost sight of PEREZ MEDINA, and then observed him again in the area of 125 Lowell Street, carrying a white plastic bag. Investigators observed PEREZ MEDINA get into a taxi, and they followed the taxi to I-93 South at mile marker 36 in Andover, Massachusetts. At that point, at the direction of investigators, a Massachusetts State Police Trooper conducted a motor vehicle stop of the taxi. Investigators observed PEREZ MEDINA seated in the middle row rear passenger side of the taxi, and observed a white plastic bag matching the description of the bag PEREZ MEDINA was observed carrying located under the seat where PEREZ MEDINA was seated. Inside of that bag, investigators found a cereal box, and inside the cereal box, investigators found two individual bags wrapped and pressed in brick form, a manner consistent with kilogram fentanyl packaging. Investigator placed PEREZ MEDINA under arrest, and seized two cellular telephones from him. After being advised of his rights in Spanish, PEREZ MEDINA provided investigators with the telephone numbers for those two cellular telephones. One of the telephone numbers provided by PEREZ MEDINA was the number that the UC used to communicate with PEREZ MEDINA. The other telephone number provided by PEREZ MEDINA was one for which this Court previously authorized investigators to obtain precise location information.

19. Investigators took custody of the two brick shaped objects, which weighed a total of 2075.8 grams (including packaging that the bricks were packaged in). Investigators performed

---

[1] *See* 22-MJ-8024-PGL.

field tests on the suspected fentanyl. The first test was inconclusive and the second test was presumptively positive for amphetamine. Based on my training and experience, I know that field tests for substances that are ultimately confirmed by a laboratory to contain fentanyl, often return results that are either inconclusive and/or positive for other substances. This is so both due to the type of field test that is used to test suspected fentanyl, as well as the fact that fentanyl is so frequently mixed with other substances, both controlled and not controlled. Based on the background of this investigation, including the fact that the UC told PEREZ MEDINA that the UC wanted "lo de abajo," I believe that the substance seized from PEREZ MEDINA likely contains fentanyl.

## CONCLUSION

20. Based on the foregoing, there is probable cause to believe that on August 15, 2022, MELVIN ANTONIO PEREZ MEDINA, did possess with intent to distribute controlled substances, in violation of Title 21, United States Code, Section 841(a)(1).

Respectfully Submitted,

JOSEPH P. FLYNN
Task Force Officer
Federal Bureau of Investigation

Sworn to and sworn in accordance with the requirements of Fed. R. Rim. P. 4.1 on

August 16, 2022.

HONORABLE PAUL G. LEVENSON
United States Magistrate Judge

8